UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NEHRAL A. MALIWAT,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE SCOTT; DREW BOSTOCK; KRISTI NOEM; PAMELA BONDI; TEAL LUTHY MILLER,<br>Defendants. | Case No. 2:25-cv-00788-TMC<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

This matter comes before the Court on Petitioner Nehral Albert Ruiz Maliwat's Emergency Motion for Temporary Restraining Order (TRO), Dkt. 2, filed with his Petition for Writ of Habeas Corpus, Dkt. 1. Petitioner is a native of the Philippines who became a legal permanent resident (LPR) of the United States in 2007. Upon reentering the United States after a vacation, he was asked to report to officials for review because of a past criminal conviction. After reporting, he was detained at the Northwest Immigration and Customs Enforcement Processing Center (NWIPC) in Tacoma, Washington, where he has remained for about ten months. Petitioner asks the Court to order his immediate release during the pendency of his habeas proceedings or, in the alternative, to order Respondents to hold an individualized bond

hearing. Dkt. 2. The Court finds that Maliwat has failed to satisfy the high bar required for emergency relief. Thus, the Court DENIES Maliwat's motion.

## II. BACKGROUND

Petitioner Nehral Albert Ruiz Maliwat is a native of the Philippines and has been a U.S. LPR since February 2007. Dkt. 1 ¶¶ 1, 11, 17–19. Before his detention, he lived with his wife and two young daughters. *Id.* ¶ 43. In 2011, Maliwat enlisted in the Air Force and entered active-duty service. *Id.* ¶ 20. While in the Air Force, Maliwat was arrested for "abusive sexual contact and rape using force." *Id.* ¶ 21. He was ultimately found guilty of rape using force and was sentenced to two years of confinement. *Id.* Though Maliwat was charged with rape again in 2015, he was never convicted. *Id.* ¶ 22. He has not been convicted of any other crimes since. *Id.* ¶ 23.

In May 2024, Maliwat went on a vacation with his wife to Mexico. *Id.* ¶ 26. He returned on May 21, 2024 and presented his LPR documentation upon reentry. *Id.* He was questioned there about his criminal conviction and U.S. Customs and Border Patrol (CBP) paroled Maliwat into the United States until June 20, 2024. *Id.* He was instructed to report to CBP for deferred inspection within that time. *Id.*

On June 19, Maliwat reported to CBP deferred inspections. *Id.* ¶ 27. CBP issued Maliwat a notice to appear charging Maliwat "as a [noncitizen][1] who has been convicted of, or who admits having committed, . . . acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense[]) [.]" *Id.* CBP instructed Maliwat to return within thirty days. *Id.*

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

On July 15, an Immigration and Customs Enforcement (ICE) Deportation Officer completed a custody redetermination for Maliwat, finding that Maliwat met "Public Safety and Border Priorities" and requiring he "complete his immigration proceedings" while detained. *Id.* ¶ 28. The same day, Maliwat reported to ICE in Tukwila for a deferred inspection appointment. *Id.* There, he was arrested and transferred to NWIPC. *Id.*

On August 6, 2024, counsel submitted a request for release. *Id.* ¶ 29. On September 5, an immigration judge (IJ) held a hearing for redetermination of custody. *Id.* ¶ 30. The IJ denied release based on a lack of jurisdiction. *Id.* ¶ 30; Dkt. 4-1 at 376. Five days later, Maliwat's counsel submitted a supplemental request for release on order of supervision or bond. Dkt. 1 ¶ 31; Dkt. 4-1 at 244–301. On November 18, Maliwat's counsel filed another motion for a bond redetermination hearing before an IJ. Dkt. 1 ¶ 32; Dkt. 4-1 at 379–83. The IJ "again declined to hold a hearing for redetermination of custody status on the basis that Mr. Maliwat remains an arriving alien, and the Immigration Court has no jurisdiction over arriving aliens[.]" Dkt. 1 ¶ 32; Dkt. 4-1 at 385. On December 12, 2024, ICE completed its evaluation of Maliwat's supplemental request for release on order of supervision or on bond. Dkt. 1 ¶ 33. ICE denied the request because of Maliwat's criminal history. *Id.*; Dkt. 4-1 at 392.

Maliwat has now been detained at NWIPC for nearly ten months. Dkt. 1 ¶ 43. On April 29, 2025, Maliwat petitioned this Court for a writ of habeas corpus. *See generally id.* He argues that his ten-month detention "has been unreasonably prolonged" and violates his Fifth Amendment right to due process. *Id.* ¶¶ 40, 64–67. He requests that the Court issue a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately or in the alternative to schedule an individualized bond hearing before this Court, or in the alternative before an immigration judge." *Id.* ¶ 68(4).

Maliwat moved for a TRO on the same day he filed his habeas petition. Dkt. 2. The TRO requests immediate release. *See id.*; *see also* Dkt. 1 ¶ 3. The Court held a scheduling conference with counsel on April 30, 2025. Dkt. 15. Respondents opposed the TRO on May 2, 2025, Dkt. 19, and Maliwat replied on May 5, 2025, Dkt. 21.

## III. LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). TROs serve a limited purpose: "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). Mandatory injunctions, like the one requested here, order a party to perform an affirmative act. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015).

A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. When a party seeks a mandatory injunction, "[t]he district court should deny such relief unless the facts and law clearly favor the moving party." *Garcia*, 786 F.3d at 740 (internal quotation marks and citations omitted).

## IV. DISCUSSION

Based on the Court's preliminary review of the record, Maliwat has not shown that he is likely to succeed on the merits. To succeed on his habeas petition, Maliwat "must show []he is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*,

No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), report and recommendation adopted, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241.) The parties do not dispute that Maliwat is subject to statutory detention under the Immigration and Nationality Act (INA). *See generally* Dkt. 2, Dkt. 19. As explained above, Maliwat is a LPR of the United States. Dkt. 1 ¶ 36. His LPR status is not set to expire until September 20, 2027. *Id.* Although an LPR who reenters the United States is not ordinarily considered an "arriving" noncitizen, an LPR who has been convicted of certain offenses is deemed "inadmissible" and must be detained pending removal proceedings. 8 U.S.C. § 1101(a)(13)(C)(v); 8 U.S.C. § 1182(a)(2). But Maliwat challenges his ten-month detention under the Fifth Amendment's due process protections. Dkt. 1 at 26–27.

In *Jennings v. Rodriguez*, the Supreme Court held that the plain text of the relevant portions of the INA "unambiguously authorize[] detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297, 303 (2018)). *Jennings* did not address whether the due process clause requires limitations on prolonged detention under the INA. After *Jennings*, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Banda*, 385 F. Supp. 3d at 1116 (quoting *Rodriguez v. Marin ("Rodriguez IV")*, 909 F.3d 252, 256 (9th Cir. 2018)). Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Id.* Consequently, "[d]istrict courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that prolonged mandatory

detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (cleaned up).

Courts in this district have now adopted what is often called the *Banda* test to assess when such detention violates due process. *See, e.g.*, *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (citing *Banda*, 385 F. Supp. 3d at 1106). Under *Banda*, a court evaluates: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Banda*, 385 F. Supp. 3d at 1106). The Court applies the *Banda* test to determine Maliwat's likelihood of success here.

First, the total length of detention is ten months. Dkt. 1 ¶ 43. Other cases in this circuit finding that prolonged detention has violated due process range from 13 to 32 months. *See Hong*, 2022 WL 1078627, at *5 (collecting cases). The petitioner in *Banda* had been detained seventeen months. *Banda*, 385 F. Supp. 3d at 1111. Maliwat cites no cases in this district where the individual had been detained for 10 months or fewer. *See* Dkt. 1 ¶ 42. The Court finds that this factor is either neutral or that it favors Respondents.

Second, the likely duration of future detention is unclear. Maliwat argues that "removal proceedings have already lasted for nearly 10 months" and that the process of litigating his removal, and related appeals, will "take years." Dkt. 21 ¶ 4. To support this claim, he shares current wait times for certain remedies but little more. Dkt. 1 ¶¶ 46, 47 ("[I]f this Court declines to speculate as to the likely duration of the future detention on the basis that Mr. Maliwat's immigration removal proceedings are still in the early stages and he could be released, this Court should find this factor neutral not favoring either party."). And "[a]t this stage, unresolved

factual questions as to the cause of Petitioner's continued detention are not enough for the Court to conclude that Petitioner is 'likely to succeed on the merits.'" *See Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 43167, at *4 (W.D. Wash. Jan. 7, 2025). The Court finds that this factor is either neutral or that it favors Respondents.

Third, the Court considers the conditions of detention. "The more that the conditions under which the non-citizen is being held resemble penal confinement, the stronger the argument that he is entitled to a bond hearing." *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (cleaned up). "A claim for punitive detention requires a comparison of the conditions under which civil and criminal detainees 'are held.'" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz. 2020) (citation omitted).

Maliwat is detained at NWIPC. Dkt. 1 ¶ 11. He explains that "the drinking water at [NWIPC] at times appears brown and yellow in color, meal times are inconsistent and delayed (to a point where dinner is served past 10:00 pm at times), meals are nutritionally insufficient, due to low staffing dorms of 70–80 people are at times supervised by just one officer and when violence breaks [out] officers have to wait for back up before intervening creating an unsafe situation." *Id.* ¶ 49. He claims that "the conditions of his criminal detention were substantially better [than the conditions at NWIPC]." *Id.* Although he does not provide details to support this comparison, the Court finds that this factor favors Maliwat.

Fourth, Maliwat has caused delays in the consideration of his application. Dkt. 1 ¶ 35. He attests that counsel "will be imminently filing a request for a continuance as well as pursuing additional claims." *Id.* While it is his right to oppose removal, Respondents are correct that, "[b]ut for the fact that his counsel is seeking a continuance of the next hearing date, if he were

successful with his application for relief from removal, his detention could end at that time." Dkt. 19 at 8. The Court finds that this factor favors Respondents.

Fifth, the record does not show that Respondents have caused delay in Maliwat's removal proceedings. *See id.* at 9. Maliwat argues that Respondents caused a delay by failing to pursue removal for nearly a decade after his initial conviction. Dkt. 1 ¶¶ 53–54. This argument is unavailing. The Court considers "the nature and extent of any delays in the removal proceedings caused by the government"—not any delay in the initiation of removal proceedings. *See Banda*, 385 F. Supp. 3d at 1120. For example, in *Banda*, the court considered delays caused by the government for failing to secure an interpreter. *Id.* The court found that the government's failures favored granting the petitioner a bond hearing. No such facts exist here. The Court finds that this factor favors Respondents.

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. When a noncitizen has not asserted "grounds for relief from removal, presumably the noncitizen will be removed . . . , and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* (cleaned up). "But where a noncitizen has asserted a good faith challenge to removal, the categorical nature of the detention will become increasingly unreasonable." *Id.* (cleaned up). Maliwat has tried, and failed, to apply for naturalization. Dkt. 1 ¶¶ 24–25. He has filed a pending application for relief from removal and he claims that he will be filing another challenge to removal under 8 U.S.C. § 1182(h). *Id.* ¶ 56. He provides little other additional information. Given that he has been convicted of a very serious crime—rape by force—the Court concludes that this factor is either neutral or cuts against Maliwat's case.

"A likelihood of success on the merits is the most important *Winter* factor and, where a party fails to satisfy this threshold showing, the Court need not consider the remaining factors."

*Doe*, 2024 WL 3291033, at *5 (citing *Garcia*, 786 F.3d at 740). Because Maliwat seeks a mandatory injunction, his "burden is even greater; []he must establish that the law and facts clearly favor h[is] position, not simply that []he is likely to succeed." *Id.* (citing *Garcia*, 786 F.3d at 740). The Court concludes that Maliwat fails to meet this burden. He has only established that one of the *Banda* factors favors his due process claim. This is insufficient to meet the high bar for immediate injunctive relief. The Court emphasizes, however, that this analysis is preliminary and does not control its eventual ruling after full briefing on Maliwat's habeas petition.

## V. RELATED MOTION TO SEAL

Maliwat has moved to seal the appendices of support related to his habeas petition and TRO motion. Dkt. 4 at 2. He explains that the appendices include "highly private mental health records, numerous pages of immigration and identification documents . . ., social security numbers, addresses, phone numbers, and dates of birth and information of minor children, as well as extensive financial records[.]" *Id.* Respondents do not oppose the motion. Dkt. 18.

A court considering a sealing request starts with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to overcome this presumption and seal court records relating to a dispositive motion must provide "compelling reasons" that are "sufficiently specific" for doing so. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006).

Here, the compelling reasons standard is met because of the privacy interest of the petitioner and his family in medical, mental health, and financial records. Courts regularly seal financial records like tax returns. *See, e.g.*, *Delashaw v. Seattle Times Co.*, No. C18-537 JLR, 2020 WL 6818720, at *3 (W.D. Wash. May 28, 2020) (citing cases); *Evitt v. Experian Info. Sols. Inc.*, No. 3:23-CV-05294-LK, 2024 WL 2274314, at *2 (W.D. Wash. May 20, 2024). The same is true for medical information. *See, e.g.*, *Cont'l Med. Transp. LLC v. Health Care Serv. Corp.*,

No. C20-0115-JCC, 2021 WL 2072524, at *4 (W.D. Wash. May 24, 2021), aff'd, No. 21-35481, 2022 WL 2045385 (9th Cir. June 7, 2022); *United States v. Walker*, 2024 WL 1156454, at *1 (W.D. Wash. Mar. 18, 2024). Thus, the attachments in support of Maliwat's motion shall remain sealed. Dkt. 4.

The Court, does not, however, seal this order, as the information in the sealed documents is referenced only generally. This mirrors Maliwat's decision in filing his motion and petition without redaction or sealed portions. *See* Dkt. 4 at 2 ("The general nature of these records is mentioned in the Petitioner's pleadings and is not being filed under seal.").

## VI. CONCLUSION

For these reasons, the Court DENIES Petitioner's motion for a TRO. Dkt. 2. The Court GRANTS Petitioner's motion to seal. Dkt. 4.

Dated this 6th day of May, 2025.

Tiffany M. Cartwright
United States District Judge