1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NEHRAL A. MALIWAT,

                          Plaintiff,

        v.

BRUCE SCOTT; DREW BOSTOCK;
KRISTI NOEM; PAMELA BONDI; TEAL
LUTHY MILLER,

                          Defendants.

Case No. 2:25-cv-00788-TMC

ORDER GRANTING IN PART WRIT OF
HABEAS CORPUS AND DENYING
MOTION TO DISMISS

## I.     INTRODUCTION

Petitioner Nehral Albert Ruiz Maliwat, who is currently detained at the Northwest

Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington,

brings this immigration habeas action through counsel. He claims that his prolonged detention

without a bond hearing violates the Fifth Amendment's guarantee of due process. Dkt. 1. The

Respondents—Bruce Scott, Warden of NWIPC; Drew Bostock, Director of the Seattle Field

Office of U.S. Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S.

Department of Homeland Security ("DHS"); Pamela Bondi, Attorney General of the United

States; and Teal Luthy Miller, United States Attorney for the Western District of Washington—

filed a return and moved to dismiss, arguing that Maliwat's mandatory detention under the

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING MOTION TO DISMISS - 1

1    Immigration and Nationality Act ("INA") does not violate the Fifth Amendment. Dkt. 23.

2    Maliwat opposed dismissal, maintaining his claim that his detention has become so unreasonably

3    prolonged that the Constitution requires a bond hearing. Dkt. 25.

4        Upon review of Respondents' motion and the relevant record, the Court DENIES the

5    motion to dismiss, Dkt. 23, concluding that Maliwat's ongoing detention without the opportunity

6    to seek bond violates his due process rights. The Court thus GRANTS IN PART Maliwat's

7    petition for a writ of habeas corpus. Dkt. 1. Respondents are ORDERED to provide Maliwat a

8    bond hearing before an Immigration Judge within 14 days of this Order. Maliwat's request that

9    this Court grant bond immediately or hold the bond hearing itself is DENIED.

10                    II.    BACKGROUND

11       Petitioner Nehral Albert Ruiz Maliwat is a native of the Philippines and has been a U.S.

12   legal permanent resident ("LPR") since January 2007. Dkt. 24-1 at 2; Dkt. 24-2 at 2; 24-3 at 2.

13   Before his detention, he lived with his wife and two young daughters. Dkt. 1 ¶ 44. In 2011,

14   Maliwat enlisted in the Air Force and entered active-duty service. *Id.* ¶ 20. While in the Air

15   Force, Maliwat was arrested for "abusive sexual contact and rape using force." *Id.* ¶ 21. He was

16   found guilty of rape using force and was sentenced to two years of confinement. *Id.*; *see also*

17   Dkt. 24-2 at 2; Dkt. 24-3 at 2. Though Maliwat was also charged with rape and aggravated

18   sexual assault in 2015, he was acquitted of those charges. Dkt. 1 ¶ 22; Dkt. 24-4 at 4. He has not

19   been convicted of any other crimes since. Dkt. 1 ¶ 23.

20       In May 2024, Maliwat went on vacation with his wife to Mexico. *Id.* ¶ 26; Dkt. 24-1 at 3.

21   He returned on May 21, 2024 and presented his LPR documentation upon arrival at SeaTac

22   airport. Dkt. 1 ¶ 26; Dkt. 24-1 at 3. U.S. Customs and Border Patrol ("CBP") questioned Maliwat

23   there about his criminal conviction and paroled him into the United States until June 20, 2024.

24

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING MOTION TO DISMISS - 2

Dkt. 1 ¶ 26; Dkt. 24-1 at 3. He was instructed to report to CBP for deferred inspection within that time. Dkt. 1 ¶ 26.

On June 19, Maliwat reported to CBP deferred inspections. *Id.* ¶ 27; *see generally* Dkt. 24-3. CBP issued Maliwat a notice to appear charging Maliwat "as a [noncitizen][1] who has been convicted of, or who admits having committed, . . . acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) [.]" Dkt. 24-3 at 2. CBP instructed Maliwat to return within thirty days. *Id.*

On July 15, an Immigration and Customs Enforcement (ICE) Deportation Officer completed a custody redetermination for Maliwat, finding that Maliwat met "Public Safety and Border Priorities" and requiring he "complete his immigration proceedings" while detained. Dkt. 1 ¶ 28. The same day, Maliwat reported to ICE in Tukwila for a deferred inspection appointment. *Id.* There, he was arrested and transferred to NWIPC. Dkt. 24-5 at 2; Dkt. 24-4 at 3. Maliwat is detained pursuant to 8 U.S.C. § 1225(b)(2) because of his conviction. Dkt. 25 ¶ 1.

On August 6, 2024, counsel submitted a request for release. Dkt. 1 ¶ 29. On September 5, an immigration judge ("IJ") considered Maliwat's request for redetermination of custody. *Id.* ¶ 30. The IJ concluded he lacked jurisdiction over the request because Maliwat was considered an arriving alien. *Id.* ¶ 30; Dkt. 4-1 at 376. Five days later, Maliwat's counsel submitted a supplemental request for release on order of supervision or bond. Dkt. 1 ¶ 31; Dkt. 4-1 at 244–301. On November 18, Maliwat's counsel moved again for a bond redetermination hearing before an IJ. Dkt. 1 ¶ 32; Dkt. 4-1 at 379–83. The IJ "again declined to hold a hearing for redetermination of custody status on the basis that Mr. Maliwat remains an arriving alien, and the Immigration Court has no jurisdiction over arriving aliens[.]" Dkt. 1 ¶ 32; Dkt. 4-1 at 385. On

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING MOTION TO DISMISS - 3

1
2
3
December 12, 2024, ICE completed its evaluation of Maliwat's supplemental request for release on order of supervision or on bond. Dkt. 1 ¶ 33. ICE denied the request because of Maliwat's criminal history. *Id.*; Dkt. 4-1 at 392.

4
5
6
7
8
9
10
Maliwat has now been detained at NWIPC for nearly twelve months. *See* Dkt. 1 ¶ 43. On April 29, 2025, Maliwat petitioned this Court for a writ of habeas corpus. *See generally id.* He argues that his detention "has been unreasonably prolonged" and violates his Fifth Amendment right to due process. *Id.* ¶¶ 40, 64–67. He requests that the Court issue a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately or in the alternative to schedule an individualized bond hearing before this Court, or in the alternative before an immigration judge." *Id.* ¶ 68(4).

11
12
13
14
15
Maliwat moved for a temporary restraining order ("TRO") on the same day he filed his habeas petition. Dkt. 2. The TRO requested immediate release. *See id.* The Court held a scheduling conference with counsel on April 30, 2025. Dkt. 15. Respondents opposed the TRO on May 2, 2025, Dkt. 19, and Maliwat replied on May 5, 2025, Dkt. 21. The Court ultimately denied the TRO on May 6, 2025. Dkt. 22.

16
17
Respondents then moved to dismiss the case. Dkt. 23. Maliwat responded, Dkt. 25, and Respondents replied, Dkt. 26. The motion is ripe for the Court's review.

18
### III.     LEGAL STANDARD

19
20
21
22
23
24
To succeed on his habeas petition, Maliwat "must show []he is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). "[I]n a series of decisions since 2001, the Supreme Court and [Ninth Circuit] have grappled . . . with whether the various immigration detention statutes may authorize

1

2

3

indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 583 U.S. 281 (2018)) (citation modified).

4

5

6

7

8

9

10

11

12

13

14

15

16

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* Citing numerous cases, the *Zadvydas* Court observed "that government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citation modified).

17

18

19

20

21

22

23

24

Soon after, in *Demore v. Kim*, the Court considered a constitutional challenge to mandatory immigration detention under 8 U.S.C. § 1226(c), a section of the INA that requires detention pending removal for noncitizens convicted of certain crimes. 538 U.S. 510, 513–14 (2003). The Court held that mandatory detention of noncitizens under Section 1226(c) during the "brief period necessary for their removal proceedings" did not violate due process. *Id.* at 513. In so holding, the Court emphasized that detention pending removal "is of a much shorter duration" than the indefinite detention at issue in *Zadvydas. Id.* at 528–29; *see also id.* at 530 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases

in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."). In a concurring opinion, Justice Kennedy—who provided the fifth vote for the majority—reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (citation omitted).

More recently, in *Jennings v. Rodriguez*, the Supreme Court held that Section 1225(b) of the INA—under which Petitioner Maliwat is detained—"unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1115 (W.D. Wash. 2019) (citing *Jennings*, 583 U.S. 281, 297, 303 (2018)). *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA. 583 U.S. at 312. After *Jennings*, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Banda*, 385 F. Supp. 3d at 1106 (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018)). Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See id.* Consequently, "district courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* at 1116. And "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (citation modified).

Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (citing *Banda*, 385 F. Supp. 3d at 1106). Under *Banda*, a court

evaluates: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Banda*, 385 F. Supp. 3d at 1106). Both parties agree that the *Banda* test applies here. *See* Dkt. 23 at 5; Dkt. 25 ¶ 2.

### IV.    DISCUSSION

**A.    Analysis of the *Banda* Factors**

*1.    Length of Detention*

First, the Court considers the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garlan*d, No. C22-303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, No. 2:22-CV-0303-LK, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases).

*Banda* relied on several cases from the Southern District of New York. First, in *Perez*, the court found that a period of nine months favored the petitioners, reasoning that "the length of detention has surpassed the rough six-month threshold at which detentions become less and less reasonable." *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018). In *Lett*, the court found that 10 months was sufficient to favor the petitioner. *Lett v. Decker*, 346 F. Supp. 3d 379, 387–88 (S.D.N.Y. 2018).

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), report and recommendation adopted, No. C23-1592-RSL, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *3 (W.D. Wash. June

26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (twelve months); *Murillo-Chavez v. Garlan*d, No. C22-303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, No. 2:22-CV-0303-LK, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (nineteen months); *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (fifteen months); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 929–30 (W.D. Wash. 2020) (eighteen months); *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (thirty months).

Courts examining shorter periods of time have found the factor neutral. *See, e.g.*, *Odimara v. Bostock,* No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months. Because Petitioner's current detention has reached—but not yet exceeded—the brief period of detention upheld in *Demore*, this first factor is neutral or, at most, weighs slightly in favor of granting a bond hearing.").

Maliwat was detained by ICE and placed in removal proceedings on July 15, 2024. Dkt. 24-4 at 2. As of this writing, Maliwat has been detained for over a year. *See id.* Courts in this district have found that a similar period of time favors the petitioner. See *Ashemuke*, 2024 WL 1683797, at *4 (eleven months); *Rahman*, 2025 WL 1920341, at *3 (twelve months). Because his detention has become prolonged, the first *Banda* factor favors Maliwat.

  2. *Likely Duration of Future Detention*

Second, the Court "considers how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including

administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). In

*Banda*, for example, the court noted that the petitioner had recently filed an appeal of a removal

order with the BIA. *Id.* As the court explained, if the BIA were to affirm the removal order, the

petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take

up to two years or longer." *Id.* (citation omitted). Thus, the *Banda* court found that the factor

favored granting the petitioner a bond hearing. *Id.*; *see also Hong*, 2022 WL 1078627, at *7

(noting that appeals in the Ninth Circuit typically pend for twelve to twenty months before

argument and then an additional three months to a year before decision, and finding the factor

favors petitioner).

Here, Maliwat has an immigration court hearing scheduled to argue for relief under the

INA and Convention Against Torture ("CAT"). Dkt. 25 ¶ 22; *see also* Dkt. 24-9 at 2; Dkt. 24-10

at 2. If the IJ still orders Maliwat removed, he argues that he "will have opportunity to file an

appeal with the BIA and if unsuccessful to seek review at the Ninth Circuit." Dkt. 25 ¶ 22.

Maliwat's petition notes that full adjudication may take years. Dkt. 1 ¶¶ 45–47.

Respondents argue that the Court should not consider the possible length of any appeals

as "no appeal has been filed and an appeal may not be necessary if he is granted relief form

removal[.]" Dkt. 23 at 5. Respondents claim that Maliwat's assertions about the possible lengths

of appeals are little more than "speculation." Dkt. 26 at 4; *see also* Dkt. 23 at 6 (similar). They

argue that, though some speculation is inherent to this consideration, the analysis "should still be

tethered to the reality of the petitioner's proceedings." Dkt. 26 at 4.

In cases like *Banda*, *Djelassi*, and *Hong*, where the courts found that the length of appeal

favored the petitioner, an appeal had already been filed. *See Banda*, 385 F. Supp. 3d at 1119;

*Hong*, 2022 WL 1078627, at *7; *Djelassi*, 434 F. Supp. 3d at 931; *see also Murillo-Chavez*, 2022

WL 16555994, at *5; *Leaupepetele v. ICE Field Off. Dir.*, No. 2:21-CV-961-RJB-DWC, 2021

WL 5450790, at *5 (W.D. Wash. Nov. 4, 2021), *report and recommendation adopted*, No. 21-0961-RBJ-DWC, 2021 WL 5447918 (W.D. Wash. Nov. 22, 2021). Where proceedings are in much earlier stages, courts have found the factor neutral. *See Rahman*, 2025 WL 1920341, at *4; *Doe*, 2024 WL 3291033, at *10.

Given that Maliwat's case is still before the IJ, and no appeal has been filed, the Court declines to speculate as to the likely duration of future detention. The Court finds this factor neutral. *See id*.

3.    *Conditions of Detention*

The Court turns next to the third *Banda* factor, the conditions of detention. 385 F. Supp. 3d at 1119. In *Banda*, the court explained that "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

Maliwat is detained at the NWIPC. Maliwat contends that "the conditions of his criminal detention were substantially better [than the conditions at NWIPC]." Dkt. 1 ¶ 49. Respondents maintain that they "lack any information about Maliwat's conditions of confinement at the Navy Brig in Charleston, North Carolina." Dkt. 23 at 6.

Maliwat, however, submitted a declaration describing the conditions. He states that during his confinement in the navy brig, "[m]eals were regular and nutritionally sufficient"; "water quality did not appear compromised"; and the "detention facility was well staffed, and I felt safe." Dkt. 4-1 at 21. He then explains that, in his confinement at NWIPC, there has been very minimal staffing. *Id.* Further, "meals are irregular and nutritionally lacking." *Id.* Dinner is sometimes not served until after 10 p.m. *Id.* To supplement the deficient meals, he "must purchase food at the commissary," where prices "appear to be marked up and are expensive." *Id.* "On multiple occasions," Maliwat has "observed that the drinking water appears brown or

yellow in color." *Id.* He has observed several violent incidents, which have been uncontrolled by guards. *Id.* at 21–22. Respondents have not contested Maliwat's description of the conditions at NWIPC.

As courts have found, detention conditions at NWIPC are "similar . . . to those in many prisons and jails." *See, e.g.*, *Doe*, 2024 WL 3291033, at *11 (citing cases); *Rahman*, 2025 WL 1920341, at *4 (citing cases). Maliwat has provided evidence supporting the similarity between the conditions at NWIPC and the conditions of criminal incarceration. *See* Dkt. 4-1 at 21–22. Thus, the Court finds that the third *Banda* factor favors Maliwat.

4.    *Delays in the Removal Proceedings*

The Court takes the fourth and fifth factors—both which consider delays caused by the parties—together. *Banda*, 385 F. Supp. 3d at 1119; *see also Doe*, 2024 WL 3291033, at *12. To start, "the Court considers the nature and extent of any delays in the removal proceedings that petitioner caused." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). *Banda* cautioned that courts should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (citing cases). Still, a detainee "is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (citation omitted). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Id.* (citations omitted).

1    Additionally, "the Court considers the nature and extent of any delays in the removal

2    proceedings caused by the government." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). With

3    respect to the government: "If immigration officials have caused delay, it weighs in favor of

4    finding continued detention unreasonable." *Doe*, 2024 WL 3291033, at *12 (citation omitted).

5    "Continued detention will also appear more unreasonable when the delay in the proceedings was

6    caused by the immigration court or other non-ICE government officials." *Id.* (citation omitted).

7     Respondents argue that this factor should favor them. Dkt. 23 at 6. They explain that

8    Maliwat's counsel sought and obtained a continuance on his merits hearing initially scheduled

9    for June 2025. *Id.*; *see also* Dkt. 24-8 at 4. The hearing was rescheduled for September 2025.

10   Dkt. 23 at 6. They urge the Court to find that the delay is "attributable solely to Maliwat and

11   reflects a deliberate litigation choice that postponed the adjudication of his application for relief."

12   *Id.* And "[b]ut for that request, his detention could have concluded by June if he had prevailed on

13   the merits of his case." *Id.*

14   Maliwat responds that he "has not engaged in bad faith dilatory tactics[.]" Dkt. 25 at 12.

15   Maliwat notes that in granting his "motion for a continuance of his next hearing to September 4,

16   2025, so that his counsel can effectively prepare his defenses for withholding of removal under

17   the INA and CAT, the IJ found *good cause* has been established for the requested continuance."

18   *Id.* at 13 (emphasis in original).

19   Maliwat's request here is similar to that in *Barraza v. ICE Field Office Director*. 2023

20   WL 9600946, at *7. The petitioner in *Barraza*'s detention had been extended by "multiple

21   requests for continuances during his removal proceedings, for extensions to adjust his status, and

22   [the] filing of a petition for review with the Ninth Circuit[.]" *Id.* But the court concluded that

23   there was "no evidence in the record Petitioner has prolonged his stay by abusing the processes

24   provided." *Id.* Thus, the court concluded, the factor weighed in favor of the petitioner. *Id.*

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING MOTION TO DISMISS - 12

In *Doe v. Bostock*, the petitioner requested and was granted several continuances. 2024 WL 3291033, at *12. One of those continuances was "to obtain counsel" and another was "for her counsel to adequately prepare for a hearing[.]" *Id.* The petitioner also identified "delays in the proceedings attributable to the government, including the immigration court's decision to grant her a three-month continuance when she requested only one month, and the re-calendaring of her individual hearing for over three months due to a lack of docket space." *Id.* Accordingly the Court found that both the fourth and fifth factor were "on balance' neutral. *Id.*

Here, as noted above, Maliwat moved for a continuance for a hearing scheduled on June 3, 2025. Dkt. 24-8 at 4. Counsel explained that she had "recently entered" the case. *Id.* She noted that Maliwat is eligible for withholding of removal under the INA or CAT. *Id.* And she explained that "[a]s both of the forms of relief have a very high burden of proof, . . . counsel is not able to prepare the case with due diligence" in the month before the hearing was set to occur. *Id.* Counsel did not specify any length for the continuance. *See id.* The IJ granted the continuance, having found good cause. Dkt. 24-9 at 2. The IJ noted that the case would be continued for the next available individual calendar hearing date after July 3, 2025 (a one-month continuance). *Id.* But the next available hearing was not until September 4, 2025. Dkt. 24-10 at 2.

These facts closely mirror *Doe*. 2024 WL 3291033, at *12. There, the court found that such delays were neutral. On one hand, the petitioner had caused delays to obtain counsel and prepare for a hearing. *Id.* On the other, the government had caused delays by granting a continuance for a longer period than petitioner had requested. *Id.* Here, Maliwat's counsel was granted a one-month continuance at her request, but the hearing was delayed an additional two months due to court availability. Accordingly, the Court finds that these two factors are, on balance, neutral or slightly favor petitioner. *See Barraza*, 2023 WL 9600946, at *7 (holding that request for continuance favored petitioner).

1

2         5.     *Likelihood of Final Order of Removal*

Lastly, the Court considers "the likelihood that the final proceedings will culminate in a

3    final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "Where a noncitizen

4    has not asserted any grounds for relief from removal, presumably the noncitizen will be removed

5    from the United States, and continued detention will at least marginally serve the purpose of

6    detention, namely assuring the noncitizen is removed as ordered . . . [b]ut where a noncitizen has

7    asserted a good faith challenge to removal, 'the categorical nature of the detention will become

8    increasingly unreasonable.'" *Id.* (citation omitted).

9    Respondents argue that this last factor favors them. Dkt. 23 at 7–8. Respondents explain

10   that Maliwat was found guilty of forcible rape after a military court martial—"an extremely

11   serious offense." *Id.* at 7. Consequently, he was deemed inadmissible. *Id.* They note that Maliwat

12   has a pending application for relief from removal, and that he claims to have other bases for

13   challenging removal. *Id.* But, because he "has not even presented the additional challenge," they

14   urge the Court to "find this factor to be speculative. *Id.* at 7–8.

15   In response, Maliwat explains that "in addition to prior claims filed Mr. Maliwat will now

16   also be asserting a good faith challenge to removal under . . . INA § 212(h) and believes he is

17   entitled to such relief." Dkt. 1 ¶ 56. Previously, the IJ assigned to Maliwat's case, Judge John

18   O'Dell, found that Maliwat's conviction is a crime of moral turpitude. *Id.* ¶ 34. But Maliwat has

19   taken several actions to challenge his removability. *See id.* First, he challenged the assertion that

20   his conviction is an aggravated felony, an issue the immigration court has not yet ruled on. *Id.*

21   Second, Maliwat submitted an I-601 application. Dkt. 4-1 at 394. The application

22   requests a waiver of grounds of inadmissibility. *Id.* The application explains that his wife and

23   two young daughters are U.S. citizens. *Id.* at 408. Their families both reside in the U.S. *Id.* at

24   410. He details his activity post-conviction and release, noting that after his incarceration, he

ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING MOTION TO DISMISS - 14

pursued a college degree, worked in the technology sector, and built a life for his family. *Id.* at 408–09. He is the primary provider for his family. *Id.* at 409. And his family has suffered greatly in his absence. *See generally id.* at 24–34.

Third, Maliwat also submitted an I-589 form for asylum. Dkt. 4-1 at 414. He notes several reasons for his request, including that his family was associated with a previous regime in the Philippines, fears related to his past convictions, and actions taken by criminals against his family in the Philippines. *Id.* at 421–22.

Maliwat also offered an ICE policy requiring the agency to consider a noncitizen's previous military service in assessing removability. Dkt. 4-1 at 314. It states that service is "a significant mitigating factor that must be considered when deciding whether to take civil immigration enforcement action against the noncitizen based on the totality of the circumstances." *Id.* at 314–15.

Courts have consistently found this final factor neutral. In *Banda*, for example, the petitioner was still appealing an asylum denial during his removal proceedings. 385 F. Supp. 3d at 1120. The Court concluded that it did not "have sufficient information to determine whether the appeal is nonfrivolous or whether petitioner ultimately will prevail." *Id.* Accordingly, the court concluded that the factor was neutral. The court in *Djelassi* reached the same conclusion in a similar scenario. 434 F. Supp. 3d at 932.

Here, the Court does the same. Maliwat has identified several good-faith challenges to his removability, and to the Court's knowledge, the IJ still has not ruled on Maliwat's petitions. *See* Dkt. 1 ¶¶ 11, 34, 55. A ruling on the likelihood of a final order of removal would be speculative. Accordingly, the Court finds this factor neutral.

6.    *Weighing the Factors*

In sum, two of the factors clearly favor petitioner: the length of detention and the conditions of detention. *See supra* Sec. II.A.1.; Sec.II.A.3. Critically, the length of detention is the most important factor. *See Banda*, 385 F. Supp. 3d at 1118. And none of the factors favor Respondents.

Nonetheless, this is a close case, as several of the factors are neutral. *See supra* Sections II.A.2, 4–5. The length of future detention, as well as the likelihood of final removal, require the Court to speculate about several variables. *See supra* Sections II.A.2, 5; *Rahman*, 2025 WL 1920341, at *4; *see also Doe*, 2024 WL 3291033, at *10; *Djelassi*, 434 F. Supp. 3d at 932.

The factors considering delay are either neutral or slightly favor Maliwat. *See supra* Section II.A.5. On one hand, Maliwat changed counsel and required additional time to litigate his case in immigration court. Dkt. 24-8 at 4; Dkt. 24-9 at 2. But some courts have held that these actions do not constitute delay, *see Barraza*, 2023 WL 9600946, at *7, and some have found that, where the rescheduling is delayed by the government, the factors are together neutral. *Doe*, 2024 WL 3291033, at *12. Accordingly, the factor is neutral or slightly favors Maliwat.

In *Calderon v. Bostock*, the court found that two factors favored the petitioner, two favored the respondents, and the remaining factors were neutral. No. 2:24-CV-01619-MJP-GJL, 2025 WL 879718, at *3 (W.D. Wash. Mar. 21, 2025). Because the first factor—the length of detention—is the most important, the *Calderon* court ultimately concluded that the petitioner's prolonged detention violated due process. *Id.*

Similarly, in *Reyes v. Wolf*, the court found that four factors weighed in the petitioner's favor. No. C20-0377JLR, 2020 WL 6820822, at *5 (W.D. Wash. Nov. 20, 2020), *enforcement denied*, No. C20-0377JLR, 2021 WL 662659 (W.D. Wash. Feb. 19, 2021), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021). These factors

included the length of her detention, the duration of future detention, conditions of detention, and the likelihood of a final order of removal. *Id.* The remaining factors favored the government. *Id.* Emphasizing the weight of the factors that favored the petitioner, the court found that the petitioner's detention had become unreasonable. *Id.*

Those cases finding that a petitioner is not entitled to a bond hearing often find that several factors weigh in favor of the government or that more factors are neutral and favor the government than favor the petitioner. *See, e.g., Barraza*, 2023 WL 9600946, at *7 (three favored the petitioner, three favored the government, two were neutral)[2]; *Leaupepetele v. ICE Field Off. Dir.*, No. 2:21-CV-961-RJB-DWC, 2021 WL 5450790, at *6 (W.D. Wash. Nov. 4, 2021), *report and recommendation adopted*, No. 21-0961-RBJ-DWC, 2021 WL 5447918 (W.D. Wash. Nov. 22, 2021) (two factors favored the petitioner, four favored the government, and two were neutral); *Murillo-Chavez*, 2022 WL 16555994, at *7 (two factors favored the petitioner, two factors favored the government, and four were neutral).

As in *Calderon* and *Reyes*, here the Court concludes that the *Banda* test as a whole favors Maliwat, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *See Banda*, 385 F. Supp. 3d at 1120.

**B.    Appropriate Relief**

Having found that Maliwat's detention has become unreasonable, the Court turns to the scope of habeas relief. In his petition, Maliwat asks the Court to issue a writ of habeas corpus "ordering Respondents to release Petitioner immediately or in the alternative to schedule an

---

[2] Some of these cases apply the test outlined in *Martinez v. Clark*, which is similar to *Banda* but contains additional factors. 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). *Martinez* applies in cases involving detention under 8 U.S.C. § 1226(c). *Id.* at *6–7.

individualized bond hearing before this Court, or in the alternative before an immigration judge." Dkt. 1 ¶ 68(4).

Courts in this district have refused to order immediate release, finding that "[t]here is no authority" to support a claim that a petitioner "is entitled to an order of release." *See, e.g.*, *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *8 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, No. 20-1660 RJB - MLP, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *Hong v. Mayorkas*, 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. C21-681-RAJ-MLP, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, No. C21-681-RAJ-MLP, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release); *Katlong v. Barr*, No. C20-0846-RSL-MAT, 2020 WL 7048530, at *5 (W.D. Wash. Oct. 30, 2020), *report and recommendation adopted*, No. C20-0846-RSL-MAT, 2020 WL 7043580 (W.D. Wash. Dec. 1, 2020) (same).

## C.    Additional Requests

### 1.    Burden at Bond Hearing

Maliwat next asks the Court to require a bond hearing at which Respondents must bear the burden to justify his continued detention. Dkt. 25 at 14–15. In *Singh v. Holder*, the Ninth Circuit clarified that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing for a detainee under 8 U.S.C. § 1226(a), which permits detention of a noncitizen while removal proceedings are pending. 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit did not confine its holding to bond hearings under Section 1226(a). *See id.*; *see also Banda*, 385 F. Supp. 3d at 1107 (reaching the same conclusion regarding *Singh*'s holding). Indeed, the *Singh* court suggested that the burden of proof remains the same regardless of the stage of removal proceedings or the portion of the INA authorizing detention. *See id.* at 1205

(rejecting argument that the burden should be lower for detainees already afforded a removal hearing). Accordingly, the Court agrees that Respondents will be required to meet the clear and convincing standard at Maliwat's bond hearing. *See id.*; *see also Banda*, 385 F. Supp. 3d at 1107; *see also Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (finding the BIA applied the correct legal standard in requiring the government to prove by clear and convincing evidence that a noncitizen detained under Section 1226(c) was a danger to the community); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020)*, rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) (affirming decision requiring the government bear a heightened burden of proof at a bond hearing for a § 1231(a)(6) detainee as a matter of due process).

   2.    *Alternatives to Detention and Recording Hearings*

   Maliwat also adds two new requests for relief to his response. Dkt. 25 at 14–18. First, he asks the Court to require that the IJ consider alternatives to detention at the bond hearing. *Id.* at 14. Second, he asks that the Court order the bond hearing be recorded. *Id.* at 17. But "new claims for relief cannot be raised in a reply brief." *Cohen v. Benov*, 374 F. Supp. 2d 850, 860 (C.D. Cal. 2005) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994), *cert. denied*, 514 U.S. 1026 (1995)).

   Even were the Court to reach these requests, the Ninth Circuit has clarified that "[n]owhere in *Singh* did we suggest that due process also mandates that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community." *Martinez*, 124 F.4th at 786. And, in *Singh*, the Ninth Circuit required a contemporaneous record of the hearing—not a "recording." *See* 638 F.3d at 1208 ("[W]e agree that due process requires a contemporaneous record of *Casas* hearings and that the memorandum decision presently provided is insufficient. We hold that, in lieu of providing a transcript, the immigration court may record *Casas* hearings and make the audio recordings available for

1    appeal upon request. Although we determine that such audio recordings satisfy due process, and

2    are feasible for the government to provide, we do not decide whether they are the only

3    constitutionally adequate alternative to transcripts.").

4        Accordingly, the Court DENIES the request to order the IJ to consider alternatives to

5    detention and to record the hearings. *See also Odimara*, 2025 WL 1490395, at *11 (similar).

6                        **V.    CONCLUSION**

7        For the foregoing reasons, the Court hereby ORDERS as follows:

8    1)  Respondents' motion to dismiss, Dkt. 23, is DENIED;

9    2)  Maliwat's petition for a writ of habeas corpus, Dkt. 1, is GRANTED IN PART;

10   3)  Within 14 days of the date of this order, Respondents shall provide Mr. Maliwat an

11          individualized bond hearing that complies with the requirements of *Singh v. Holder*,

12          638 F.3d 1196 (9th Cir. 2011).

13       Dated this 7th day of August, 2025.

14

15                                    Tiffany M. Cartwright
                                      United States District Judge

16

17

18

19

20

21

22

23

24